**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

AMERICAN TELECOM CORP.,          )
                                 )
          Appellant,             )
                                 )
     v.                          )     No. 04 C 8053
                                 )
SIEMENS INFORMATION AND          )
COMMUNICATIONS NETWORK, INC.,    )
                                 )
          Appellee.              )

<u>**MEMORANDUM OPINION**</u>

          This case is before the court on American Telecom Corp.'s

("ATC") appeal from two orders of Bankruptcy Judge Jacqueline P.

Cox: (i) a February 3, 2004 order dismissing ATC's Chapter 7

bankruptcy petition, and (ii) a September 21, 2004 order imposing

sanctions against ATC's counsel.  For the reasons set forth below,

both orders are affirmed.

<u>**BACKGROUND**</u>

          The material facts in this case are undisputed.  On

August 10, 2000, the United States District Court for the Northern

District of Georgia entered a $173,000 judgment in favor of Siemens

Information and Communications Network, Inc. ("Siemens") and

against ATC for copyright and patent infringement.  <u>See</u> <u>Telecomm</u>

<u>Tech. Servs. v. Siemens Rolm Communs.</u>, 150 F.Supp.2d 1365 (N.D. Ga.

2000).  In addition to entering judgment against ATC, the court

dismissed ATC's antitrust counterclaim that had sought damages in excess of $5 million.  See id.  ATC appealed the rulings to the Eleventh Circuit, but did not post an appeal bond to stay enforcement of the judgment.

On January 17, 2002, Siemens commenced supplemental collection proceedings against ATC in the Circuit Court of Cook County, Illinois.  At a deposition conducted on May 13, 2002 pursuant to a citation to discover assets, ATC's president, Terry Glubisz, testified inter alia that: (i) he and his brother Walter Glubisz ("the Glubisz brothers") were the only shareholders of ATC; (ii) the company had ceased doing business in December 2001; and (iii) at that time, the company had no income, inventory or other assets.  On November 4, 2002, having determined that ATC had no assets to pay the judgment, Siemens filed a new suit in the Circuit Court of Cook County against the Glubisz brothers seeking to enforce the judgment against them under a veil-piercing theory.

Trial in the veil-piercing case was set for August 25, 2003.  On June 23, 2003, the Glubisz brothers filed a motion to stay the proceedings pending resolution of ATC's appeal before the Eleventh Circuit.  The motion was denied, and trial was reset for September 11, 2003.  On September 9, 2003, the Glubisz brothers again moved to continue the trial, and it was reset for November

17, 2003.[1]  On November 12, 2003, five days before trial, the
Glubisz brothers moved the court to reconsider its earlier ruling
denying their motion for a stay pending the ATC appeal.  The court
denied the motion and entered an order confirming the November 17
trial date.

     The following day, on November 13, ATC filed a voluntary
petition for Chapter 7 bankruptcy protection.  Then, on November
17, the day of trial, the Glubisz brothers filed an emergency
motion to dismiss the complaint, or stay the trial, based on the
filing of that petition.  Siemens responded that the automatic stay
triggered by ATC's petition did not affect the veil-piercing suit
against the Glubisz brothers; it only applied to litigation against
ATC, the bankruptcy petitioner.  The court stayed the trial pending
a ruling by the bankruptcy court on the proper scope of the
automatic stay provisions.  Accompanying Siemens's response was a
letter addressed to both ATC's and the Glubisz brothers' attorneys
(who shared an office) stating the following:

> [P]lease be advised that I consider the filing
> of the bankruptcy petition on November 13,
> 2003 to be another attempt to stay the trial
> of the instant case.  The petition, as filed,
> constitutes a misuse, and a manipulation, of

---

[1]The brothers also requested the court to lift a stay it had
placed on their ability to sell certain real estate.  The court
permitted the brothers to sell one parcel of property as long as the
sale proceeds were placed in escrow as security for any potential
judgment against them.  Originally, the court ordered that $260,000 be
placed in escrow, but when the property sold for $182,682.22, the
court, on the parties' agreed motion, allowed that amount to stand as
the security.

> the bankruptcy process in order to frustrate
> the state court proceedings. There can be no
> dispute that this bankruptcy petition was
> filed for the sole purpose of delaying the
> trial of the . . . case after the state court
> denied your motion to stay. As such, it was
> filed in bad faith and is subject to being
> dismissed with the assessment of fees and
> costs. . . .

(Appellee Br., Ex. A.)

On November 18, Siemens filed a motion to dismiss ATC's petition. After briefing from both sides, the bankruptcy court, on February 3, 2004, held that ATC's petition was filed in bad faith as an "unfair litigation tactic for delaying Siemens'[s] alter-ego claim against the Glubisz brothers," and dismissed the case for "cause" under 11 U.S.C. § 707(a). In re American Telecom Corp., 304 B.R. 867, 872, 875 (Bankr. N.D. Ill. 2004).

On March 3, 2004, Siemens filed a motion pursuant to Federal Rule of Bankruptcy Procedure 9011 seeking attorney's fees in the amount of $5,500. The court found that ATC and its counsel had filed the bankruptcy petition for an improper purpose and without an adequate pre-filing investigation, and granted Siemens attorney's fees in the amount of $4,825 assessed against ATC's counsel. In re American Telecom Corp., 319 B.R. 857, 876 (Bankr. N.D. Ill. 2004). ATC appeals these rulings.

### DISCUSSION

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. See In re Smith,

286 F.3d 461, 464-65 (7th Cir. 2002); Fed. R. Bankr. P. 8013. ATC presents three issues for review: (i) whether the court erred in dismissing ATC's bankruptcy petition without an evidentiary hearing; (ii) whether the court erred in dismissing the petition because preservation of ATC's Eleventh Circuit appeal was an allegedly proper reason for filing it; and (iii) whether the court erred in levying sanctions against ATC's counsel.

On the first issue, ATC argues that the case was erroneously dismissed without a hearing and solely on the basis of unproven allegations that its motive in filing the petition was to frustrate and delay the state court action against the Glubisz brothers. According to ATC, "the Bankruptcy Court . . . made factual findings about things that were not even presented . . . [the] decision might be sensible if there had been an evidentiary hearing and there was testimony from someone that ATC's bankruptcy attorney stated that the purpose of the bankruptcy was to obtain a stay for the principals. But there was no such testimony or any other evidence." (Appellant Br., p. 7, and Reply Br., p. 5.)

The argument is meritless. There *was* evidence before the bankruptcy court in the form of exhibits submitted by Siemens: the judgment order against ATC; excerpts from Terry Glubisz's deposition testimony; a record of the state court proceedings; and

ATC's bankruptcy petition.[2]  From this evidence, the court found
the following facts: ATC was appealing a $173,000 judgment in favor
of Siemens without posting an appeal bond; Siemens had filed suit
against the Glubisz brothers, the only two shareholders of ATC, to
satisfy that judgment; the brothers had attempted to postpone the
trial on two (we count three) prior occasions; and one day after
the brothers' final motion was denied, and four days before trial,
ATC filed a Chapter 7 bankruptcy petition.  In re American Telecom
Corp., 304 B.R. at 868, 873.  Moreover, ATC had not conducted any
business for two years; the company's assets were *de minimus*
(approximately $1,000 in office equipment) or speculative (the
appeal of its dismissed $5 million counterclaim); and it had only
one significant creditor, Siemens.[3]  Id. at 868-69.

These facts are undisputed and provided the court with
a reasonable basis to conclude that ATC's petition was not filed in
good faith.  Chapter 7 of the Bankruptcy Code allows a bankruptcy
court to dismiss a case for "cause," 11 U.S.C. § 707(a), and
"cause" has routinely been interpreted to include a lack of good
faith in filing a petition.  See United States v. Pedigo, 2005 WL

[2]The court was entitled to take judicial notice of these
documents as "matters of public record."  See Henson v. CSC Credit
Servs., 29 F.3d 280, 284 (7th Cir. 1994).

[3]ATC's bankruptcy petition listed Siemens as its only creditor.
Later ATC asserted that the Glubisz brothers had claims against it for
unpaid salaries and rent, and that the law firm handling the Eleventh
Circuit appeal had a potential claim under a contingency contract.

2016238, at *1 (S.D. Ind. Jan. 13, 2005) (collecting cases).
There is no rigid test for determining whether a petition is filed
in good faith. Instead, the court looks at the totality of the
circumstances surrounding the filing, and evaluates whether the
petition presents a bankruptcy case implicating any of the policies
underlying the chapter in which the debtor seeks protection.

The only legitimate purpose of a corporate Chapter 7
petition is "the fair and orderly liquidation of corporate assets
to creditors." In re American Telecom Corp., 304 B.R. at 870. The
bankruptcy court explained why ATC's petition could not implicate
that goal. If ATC prevailed on its Eleventh Circuit appeal, and
then on its $5 million counterclaim on remand, it would have a
large sum of money, but it would owe Siemens nothing and federal
bankruptcy intervention would hardly be necessary to satisfy the
alleged debts to two controlling shareholders and to a law firm
responsible for the appeal. If ATC lost on appeal, then it would
have no assets to speak of, and a no-asset Chapter 7 case obviously
cannot implicate a policy of distribution to creditors. In either
case, the petition would serve only as an "an inexpensive appeal-
bond substitute." Id. at 872.

The court also discussed how the circumstances
surrounding ATC's filing were strong evidence of bad faith:

> [T]he fact that the state court judge, without
> seeing a proper appeal bond, twice denied a
> motion to stay the . . . Cook County action
> before ATC filed this bankruptcy petition on

> the eve of the nondebtor's trial is
> overwhelming evidence of ATC's primary motive
> for filing, especially in light of ATC's two-
> year opportunity to file this same case after
> ceasing operations.

Id. at 874. Ultimately, the court had no trouble concluding that the petition was nothing more than "an unfair litigation tactic used to delay the alter-ego lawsuit against nondebtors in state court." Id. at 873.

Although the general rule is that a hearing is required prior to dismissal, see 11 U.S.C. § 707(a) ("[t]he court may dismiss a case under this chapter only after notice and a hearing"), when, as here, there is no dispute over the material facts and it is apparent on the face of the record that the case is irremediably defective, the court need not go through the motions of a hearing. See In re Keebler, 106 B.R. 662, 664 (Bankr. Hawaii 1989); In re Jephunneh Lawrence & Assocs Chtd., 63 B.R. 318, 321 (Bankr. D.D.C. 1986). And of course there is no requirement, as ATC suggests, that the court's factual findings be based on direct testimonial, rather than circumstantial evidence. Rare is the case when direct evidence on issues of intent and motive is available. The court's determination regarding ATC's motives for filing the petition was a factual finding that we review for clear error, and we find none.

ATC's second argument is that it filed its petition not to thwart Siemens's action against the Glubisz brothers, but to

protect its Eleventh Circuit appeal from turnover in the
supplemental collection proceedings. Section 5/2-1402 of the
Illinois Code of Civil Procedure lists the assets that may be
attached pursuant to collection proceedings in Illinois courts;
among those assets is a "chose in action" belonging to the debtor.
See 735 ILCS § 5/2-1402(c)(5). ATC's argument before the
bankruptcy court, and repeated here, is that its appeal was such a
"chose in action," and therefore the state court could order ATC to
execute an assignment of the appeal to the judgment creditor,
Siemens. If such an assignment was ordered, Siemens would own an
appeal *filed against itself* and would promptly dismiss it.

The bankruptcy court acknowledged that ATC's concern was
"not without merit" (however unlikely a scenario it was), but held
it was an issue properly addressed to the state court, and did not
"present any additional reason why this Chapter 7 case implicates
any true bankruptcy-law policies." 304 B.R. at 874. The proper
way for ATC to preserve its "chose in action," the court reasoned,
was to post an appeal bond, not to seek refuge in the bankruptcy
courts.

In their briefs before this court, the parties dispute
whether an appeal from a dismissal on the merits *is* a "chose in
action" under the Illinois statute, and if so, whether such an
appeal may be involuntarily assigned to a creditor which itself is
an adverse party in that appeal. These are interesting questions,

but we need not wrestle with them here. Even if the appeal is a
"chose in action" that may be involuntarily assigned in a
collection proceeding, and even if preservation of that asset might
be a legitimate reason for a Chapter 7 filing under the right
circumstances (we express no opinion on these issues one way or
another), what is important here is that the court explicitly found
that ATC's primary motive for filing the petition was to subvert
the state court proceedings. A bankruptcy petition interposed in
bad faith will not be saved on the ground that it could present an
objectively colorable claim. The court's finding of illicit motive
had ample support in the record, and that finding was a proper
basis on which to dismiss the petition. In any event, the turnover
issue is now moot because the Eleventh Circuit has affirmed the
dismissal of ATC's counterclaim. See Telecom Tech. Servs. v. Rolm
Co., 388 F.3d 820 (11th Cir. 2004).

Finally, ATC argues that the bankruptcy court's award of
attorney's fees was not supported by the evidence. This contention
need not detain us long. The bankruptcy court found two
independent bases for the fee award: (i) ATC and its attorney filed
the petition for an "improper purpose" in violation of Rule
9011(b)(1), and (ii) without conducting a reasonable pre-filing
investigation in violation of Rule 9011(b)(2).[4] Starting with Rule

_____

[4]Bankruptcy Rule 9011 provides, in relevant part:

(b) Representations to the court

9011(b)(1), that section prohibits the filing of a pleading for an improper motive or reason such as delay, harassment, or causing expense. Fed. R Bankr. P. 9011(b)(1). The focus is on *why* the nonmovant filed the pleading at issue. <u>See</u> <u>In re Collins</u>, 250 B.R. 645, 661-62 (Bankr. N.D. Ill. 2000). The court looks at "objectively ascertainable circumstances that support an inference" that the nonmovant's purpose for filing a pleading was improper. <u>Id.</u> Here, as the bankruptcy court recognized, the findings necessary to impose sanctions under Rule 9011(b)(1) already had been made in the court's order of dismissal: "[T]he Court essentially decided that this Chapter 7 case had been filed for an improper purpose when it issued its dismissal ruling on February 3, 2004. A close review of the decision reveals the basic conclusion that the case, having no discernable relationship to any true bankruptcy policies, had been used as a litigation tactic to frustrate and delay the debtor's opponent in a two-party dispute." 319 B.R. at 872-73. We have determined the soundness of the

---

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,
(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; . . .

Fed. R. Bankr. P. 9011(b)(1) and (2).

-12-

court's order of dismissal, and find no error in the court's conclusion that ATC and its attorney violated Rule 9011(b)(1) by filing the Chapter 7 case for an improper purpose. Since we have determined that the court's award of fees was proper under Rule 9011(b)(1), we need not discuss the court's alternative rationale for awarding fees under Rule 9011(b)(2).

<u>**CONCLUSION**</u>

For the foregoing reasons, the bankruptcy court orders of February 3 and September 21, 2004 are affirmed.


DATE:    September 7, 2005


ENTER:   _____

John F. Grady, United States District Judge